26 C.C.P.A. (Patents)

## In re KOHLER.
### Patent Appeal No. 4115.

Court of Customs and Patent Appeals.
April 10, 1939.

John O. Seifert, of New York City (John J. Darby, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability in view of prior art of claims 1, 3, 4, 5, and 6 of an application relating to machines for making pies.

There are several allowed claims, each of which seems to be limited to means for marking a ribbon of dough for the upper crust of pies to indicate the nature of the pies. This feature is not present in the appealed claims.

Appealed claim 1 illustrates the nature of the subject-matter. It reads: "1. In a machine of the class described, means for forming a continuous ribbon of dough, including a hopper, a pair of co-operating rollers for propelling the dough from said hopper, a second pair of co-operating rollers to operate on the dough after it has been acted on by said first rollers, means forming a compression chamber between said first and second rollers, said means lying close to but out of contact with said second rollers, and means for dusting flour on both of said second mentioned rollers so that said flour does not come into contact with the dough until it arrives at or approximately at the bight of said second rollers so that said flour is applied to the dough before it passes through said bight."

Claim 3 defines the second pair of rollers as being of relatively larger diameter than the first pair of rollers. This claim does not specifically state that the flour is applied to the dough before it passes through the bight between the second pair of rollers, but does contain a statement that the "flour does not come into contact with the dough until it arrives at or approximately at the bight of said second pair of rollers."

Claim 4 contains a provision for means for driving the pairs of rollers at such ratio that the peripheral speed of the first pair is greater than the peripheral speed of the second pair.

Claim 5 includes a provision for means for adjusting the dusting means whereby a relatively larger quantity of flour may be dusted on one of the rollers of the second pair than on the other.

In claim 6 there are two limitations which differentiate it from the other claims. The first limitation defines the mounting of the second pair of rollers so that the bight between them is narrower than the bight between the first pair. The second defines a specific construction and arrangement of the compression chamber whereby the layer of flour dusted onto the second pair of rollers may pass below the side walls of the chamber and contact the opposite surfaces of the dough delivered from the chamber to the bight between the rollers.

The following references were cited:
Barbieri, 968,109, August 23, 1910.
Barbieri, 968,110, August 23, 1910.
Sonsthagen 1,249,294, December 4, 1917.
Vicars, 1,519,569, December 16, 1924.
Smith, 1,459,166, June 19, 1923.
Smith, 1,725,835, August 27, 1929.
Parsons, 1,856,585, May 3, 1932.

822

As we understand it, the Smith patents were cited by the examiner solely with respect to two claims, 11 and 21, which the board subsequently allowed. So, those references require no consideration here.

Figure 3 of appellant's drawings embraces all the features necessary to be considered in connection with the appealed claims and the same is here reproduced:

and a pair of spaced walls 34 between the upper and lower rolls which form the side walls of a dough compression chamber. These walls converge downwardly with their lower ends close to the bight of the lower pair of rollers but spaced a short distance from these rollers. A flour sifting mechanism is arranged above each one of the lower rollers and serves to sift flour

Fig. 3.

The following we quote from the decision of the board: "The invention relates to a machine for forming a continuous ribbon of dough. As shown in Fig. 3 this machine comprises a dough hopper 17, a pair of spaced dough feeding rollers 22 and 23 at the bottom of the hopper, a second pair of rollers 26, 27 below the first pair for forming a thin ribbon of dough

on the surface of the roller. The dough is forced by the upper pair of rollers into the compression chamber to the bight portion of the lower rollers where it is formed into a thin ribbon by the lower rollers. Because the lower ends of the side walls of the compression chamber lie close to the bight of the lower rollers, the dough will not be forced out laterally from the com-

pression chamber and the flour sifted on the lower rollers will not contact the dough except close to the bight portion of the rollers. Applicant alleges that by this arrangement of the parts the lower forming rollers will successfully form a thin ribbon of dough which will not stick to the rollers and may be deposited on the conveyor below the rollers."

The board made no specific reference to the Sonsthagen patent but referred to the other references now in the case as follows:

"The two Barbieri patents disclose machines for making sheets of dough and comprise pairs of upper and lower rollers, a pair of dough removing knives for the upper rollers and flour applying means for the lower rollers.

"The Vicars patent discloses a machine for making a sheet of dough and comprises a pair of upper rollers, a pair of lower rollers and a pair of walls between the rollers forming a dough compression chamber. The patent does not state that the walls are spaced from the rollers or that any flour applying means are provided. It is apparent, it seems to us, that flour would be applied to the lower rollers, otherwise the dough would stick to them. It is our view that it would not be inventive to space the walls a short distance from the lower rollers so that flour would pass below the walls to the dough which may be applied to the rollers. We also think no invention would be involved in employing some particular flour applying means in the Vicars patent in view of the Barbieri patents or the Parsons patent. If this change be made in Vicars patent the flour will come in contact with the dough close to the bight portion of the rollers."

The board then affirmed the examiner's decision in a general statement saying: "It is our view that claims 1 to 6 [1] inclusive are not patentable over the above references for the reasons given and also assigned by the examiner."

There appears to be no controversy as to what the references show and it is deemed unnecessary to give any more specific description of them than that quoted from the board's decision.

Taken separately each feature in appellant's combination may be conceded to be old but it is quite apparent that he has greatly modified the prior art, and, in the final analysis, the question is whether such modification involved invention.

The brief on behalf of appellant specifies the modifications as follows:

"Unquestionably, applicant has advanced the practical art of forming pie crust dough into a ribbon or sheet, by (a) arranging the compression chamber so that the side walls thereof are close to but out of contact with the ribbon forming rollers, (b) delivering and directing dough from the chamber directly toward the bight of the rollers, and (c) dusting a layer of flour onto each roller and carrying it around, on the rollers so that it will contact the dough at or approximately at the bight of the rollers. By this combination of instrumentalities, the dough is prevented from sticking to the rollers, for the first time in the practical art of forming pie crusts into a ribbon or sheet.

"Applicant discovered defects in prior machines designed for the same general purpose and devised and pointed out means for correcting such defects."

Various authorities are then cited in support of appellant's contention that his combination of features in the device at issue presents a patentable combination.

With this view we feel constrained to agree.

It is not questioned that the machine is successful and constitutes a valuable contribution in a large and important industrial field. This of itself does not prove invention but it is a factor proper to be considered. As often has been said, it is difficult in many, many cases to determine the point where one's work passes beyond mechanical skill and becomes inventive in character. Our feeling is that in the instant case appellant's contribution to the art properly may be deemed of the latter character and so entitles him to the benefit of the patent laws.

Accordingly, the decision of the board is reversed.

Reversed.

---

[1] No appeal was taken as to rejected claim numbered 2.